# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2696

_____

United States of America,     *
    *
       Plaintiff - Appellee,     *
    *    Appeal from the United States
       v.     *    District Court for the Eastern
    *    District of Missouri.
Emilio Jose Saenz,     *
    *
       Defendant - Appellant.     *

_____

Submitted: December 11, 2006
Filed: January 29, 2007

_____

Before LOKEN, Chief Judge, MURPHY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Emilio Jose Saenz of one count of conspiracy to distribute and possess with the intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § § 841 (a)(1) and 846. The district court[1] sentenced Saenz to 210 months imprisonment. Saenz appeals, claiming that the evidence resulting from a vehicle search should have been suppressed. We affirm.

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

In June 2005 the St. Charles police began investigating a series of money orders sent by a city resident, Simon Hernandez, to individuals in Albuquerque, New Mexico. They then discovered that on July 5, 2005 Hernandez sent a moneygram in the amount of $3125 to a Melissa Saenz in Texas (Melissa is the sister of appellant Emilio Saenz). A confidential source informed the police on September 27, 2005 that Melissa was staying in the St. Charles area and that a vehicle registered to Emilio Saenz was parked outside the residence of Simon Hernandez. The police initiated surveillance on the house, and observed a red pickup truck with Texas license plates parked outside. A record check revealed that the truck was registered to Emilio Saenz.

During the course of the surveillance on September 27, officers observed two individuals, later identified as Emilio and Melissa Saenz, arrive at the Hernandez house at approximately 1:30 p.m. in a blue Ford F150 truck with temporary Texas license plates. At approximately 6:30 p.m. the blue truck was backed into the garage. Thirty minutes later Emilio Saenz drove it out with Melissa sitting in the passenger seat. The police tracked the truck to a gas station, where Melissa moved into the driver seat. Officers then followed the blue truck as it drove onto eastbound interstate 70, and turned onto southbound interstate 270 and then westbound interstate 44, a route the police knew was often used for drug trafficking. Officers observed the truck make improper lane changes and arranged to have a uniformed officer stop it.

Officer David Doyle was informed that Emilio and Melissa Saenz were being investigated for drug trafficking and that their truck had made improper lane changes and was asked to pull over the vehicle. Officer Doyle identified the truck and followed it until he reached a spot where it was safe to stop it. Several detectives from the investigative team soon arrived at the scene and separated Melissa and Emilio for questioning. Both of them told officers that they had traveled to Missouri to sell the red pickup truck to Hernandez. Emilio said he did not know the sale price of the vehicle and denied that the money from the sale was in the blue truck. Melissa also

did not know the sale price but indicated that she thought the proceeds were in the truck.

The officers asked the suspects to move the truck to an exit ramp to avoid interrupting traffic. Officers David Senter and Gary Sodoma each asked Emilio Saenz if they could search the vehicle; Emilio consented both at the original stop and after the truck was moved. Melissa also gave her consent to the search. Detective Sodoma then obtained Emilio's permission to use his drug dog, and the dog alerted to the back of the truck. The officers observed that the spare tire appeared to have been recently removed so they picked it up, tapped it, and rolled it. It appeared to them that something solid was inside the tire. When they cut it open, they found several bundles of currency which amounted to $128,160 when counted. Melissa and Emilio Saenz were arrested. At Emilio's booking, $3500 in cash was seized from his person.

Special agents from the Drug Enforcement Administration, Steve Hofer and Jim McHugh, were notified of the stop and arrived at the scene after the tire had been cut open. They took the cash into custody, and Agent Hofer obtained a search warrant for Hernandez's house. A search of his home pursuant to the warrant discovered approximately six kilograms of cocaine. The agents also found a money counter and rolls of packing tape like that used to seal the bundles of cash hidden in the truck.

Emilio Saenz and three other defendants were charged in an indictment with conspiracy to distribute and possess with the intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § § 841(a)(1) and 846. He moved to suppress the evidence seized in the blue truck, and an evidentiary hearing was held before a magistrate judge who issued a report and recommendation finding that Emilio and Melissa Saenz voluntarily consented to the search of the truck. The district court adopted the report and recommendation and denied the motion to suppress. A jury trial was held in March 2006 during which Officers Doyle, Senter, and Sodoma described their investigation. Senter and Sodoma testified that Emilio Saenz had consented to the search, and Simon Hernandez, who had been indicted as a

codefendant, also testified against Emilio. The jury found him guilty as charged. On his appeal Saenz argues that the district court erred in finding that he voluntarily consented to the search and in denying his motion to suppress.

Saenz first argues that the officers were not justified in stopping his truck because there was no proof of a traffic violation and there were insufficient grounds for a stop based on reasonable suspicion. He points out that the police video on Doyle's squad car did not show any traffic violation, that no traffic ticket was issued until the next day, and that the government abandoned its reliance on the traffic violation to focus on reasonable suspicion midway through the prosecution, suggesting pretext. He argues that the officers did not have reasonable suspicion because a $3125 money transfer was not a large enough amount to be consistent with drug trafficking and the money was sent too early for it to have been related to the Saenzs' trip to St. Charles. Emilio also contends that if the officers had reasonable suspicion to make the initial stop, it expired before they cut open the spare tire, citing United States v. Watts, 7 F.3d 122, 126 (8th Cir. 1993). He argues that the government's reliance on the inconsistent stories told by him and Melissa to justify use of the drug dog is misplaced and that the inconsistencies in their answers could be reconciled.

The government responds that the traffic stop was justified because the officers had reasonable suspicion that the Saenzs were involved in drug trafficking and because they had observed lane change violations. The government points out that the officers followed the truck onto three different highways, two officers testified during trial that they witnessed lane violations, and Doyle's camera only recorded the truck's movement for one minute prior to its being pulled over. The government also asserts that the primary reason for the stop was the officers' reasonable suspicion that Emilio and Melissa were involved in drug trafficking. That suspicion was based on the money transfer, the information from the confidential source, and the thirty minute stop inside Hernandez's garage before the truck departed on a common drug route.

The denial of a motion to suppress is reviewed de novo with the underlying factual determinations reviewed for clear error. United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005). An officer is allowed to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). Here, the officers had more than a mere hunch to justify the stop. See Terry, 392 U.S. at 27. The officers knew of the wire transfer from Hernandez to Melissa Saenz, they had received information from a confidential source that she was visiting St. Charles, and they confirmed the presence of Emilio Saenz's vehicle at Hernandez's house. The officers also witnessed the blue pickup truck enter the garage and leave thirty minutes later, consistent with the unloading or loading of drugs or drug profits.

We conclude that the officers had reasonable suspicion to pull over the truck. Moreover, that suspicion did not dissolve after they talked with Emilio and Melissa Saenz because neither could name the sale price of the red truck which they both said they had sold to Hernandez and they gave conflicting responses about the location of the money they claimed to have received from the vehicle sale. We conclude the district court did not err in denying the motion to suppress.

Saenz contends that the district court erred by finding that he gave voluntary consent to search the truck. He argues that he and Melissa were coerced when they were asked to moved the truck to an isolated road and were confronted by multiple officers. He complains that he was not given his Miranda warning until after the search and that the officers should have given him a written consent form. Furthermore, he asserts that the use of the drug dog suggests the officers did not think they had received voluntary consent.

The voluntariness of a consent to a search is a factual question that is reviewed for clear error. United States v. Hines, 387 F.3d 690, 694 (8th Cir. 2004). A consent is voluntary if the consenting individual had "a reasonable appreciation of the nature and significance of his actions." United States v. Rambo, 789 F.2d 1289, 1297 (8th

Cir. 1986).  Consent can be given orally or in writing, and it is not necessary to use a written consent form.  United States v. Siwek, 453 F.3d 1079, 1084 (8th Cir. 2006). We have not required an officer to provide Miranda warnings before requesting consent to search or held that an absence of Miranda warnings would make an otherwise voluntary consent involuntary.  United States v. Payne, 119 F.3d 637, 643 (8th Cir. 1997).  The government must prove by a preponderance of the evidence that the consent was voluntary.  United States v. Czeck, 105 F.3d 1235, 1239 (8th Cir. 1997).

We examine the totality of the circumstances to evaluate whether consent was voluntary.  United States v. Chaidez, 906 F.2d 377, 380-81(8th Cir. 1990). The following factors are relevant to determining whether Emilio's consent was voluntary: 1) his age; 2) his general intelligence and education; 3) whether he was intoxicated at the time; 4) whether he consented after being informed of his Miranda rights; and 5) whether he was aware of his rights and protections due to previous arrests.  See id. at 381.  Other relevant circumstances include: 1) the length of time the subject was detained; 2) whether the officers acted in a threatening manner; 3) whether any promises or misrepresentations were made; 4) whether the subject was in custody or under arrest at the time; 5) whether the consent occurred in public; and 6) whether the subject was silent as the search was conducted.  Id.

Here, Emilio was in his thirties, did not seem to be under the influence of drugs or alcohol, and appeared to be of normal intelligence.  The officers' request to move the truck to a safer area with less traffic was not coercive, nor did they use threats, offer improper promises, or suggest that Emilio could not refuse consent. His detention was for a short period of time, and Emilio gave his consent to at least two officers.  During the search he was silent and did not complain or question the officers, but instead offered oral consent again when Officer Sodoma asked if the officers could use the drug dog.  Even though no Miranda warning was given until after the search was completed, this does not nullify his otherwise voluntary consent. The district court properly weighed the factors identified in United States v. Chaidez,

and we conclude it did not clearly err by finding that Emilio Saenz voluntarily consented to the search of the truck.

Accordingly, we affirm the judgment of the district court.

_____