# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3199

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Eduardo Arreola, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: June 11, 2007
Filed: October 15, 2007

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Eduardo Arreola conditionally pled guilty to possession with intent to distribute more than fifty grams of methamphetamine after the district court[1] denied his motion to suppress evidence seized during a search. He appeals, and we affirm.

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, adopting the report and recommendation of the Honorable Beverly S. Jones, United States Magistrate Judge for the Western District of Arkansas.

On October 7, 2005, Eduardo Arreolo's brother, Esteban Arreola, was arrested on methamphetamine-related charges following a successful sting conducted by state police. After his arrest, Esteban executed a written waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and consented to an interview by two federal agents. Esteban stated that he had obtained his methamphetamine from Eduardo, who drove a white Pontiac Bonneville, but that he did not know Eduardo's whereabouts or where he was living. Esteban also told the agents that he kept guns at the apartment he shared with his fiancée, Carissa Eeds. Because the agents knew that Esteban was a convicted felon and thus prohibited from possessing firearms, they asked him for permission to search the apartment for these firearms. Esteban agreed and signed a written form consenting to a search of his apartment.

When the agents arrived at Esteban's apartment, they noticed a white Pontiac Bonneville parked outside. Concluding that Eduardo was likely in Esteban's apartment, the agents called the Fort Smith police for assistance. Two or three police officers and an agent with the Bureau of Immigration and Customs Enforcement arrived, bringing the total number of law enforcement officers at the scene to five or six. With their guns drawn, the officers knocked on the door of Esteban's apartment, which was answered by Eeds. The agents told Eeds that Esteban had been arrested and had agreed to let them search the apartment. Eeds indicated that she did not object to a search. While the agents were concluding this conversation with Eeds, Eduardo walked out of a bedroom in the apartment. The immigration agent recognized Eduardo, and the officers immediately entered the apartment and arrested him.

After handcuffing Eduardo, placing him in a chair, and securing the apartment, the agents holstered their weapons and advised Eduardo of his *Miranda* rights. Eduardo agreed to waive his rights and speak with them. Eduardo spoke English well

and gave no sign that he was under the influence of drugs or alcohol. He said that the room he had exited was his bedroom, and he signed a written consent form giving the agents permission to search this room. Agents also asked Eduardo if they could search his car, and after some hesitation, he agreed and initialed the consent form to indicate his agreement. The agents recovered three ounces of methamphetamine from a safe in Eduardo's room, and two firearms and a bag of marijuana from his car.

Eduardo was charged with possession with the intent to distribute fifty grams or more of a substance containing methamphetamine, along with two other counts. Eduardo moved to suppress the evidence obtained during the search of his room and car, arguing that he had not consented to the warrantless search. The magistrate judge recommended that Eduardo's motion be denied. The district court adopted the report and recommendation, and denied the motion to suppress. Eduardo then entered a conditional plea of guilty to the charge of possession with intent to distribute, reserving the right to appeal the district court's denial of his motion.

## II.

Eduardo argues on appeal that the searches of his room and car violated his Fourth Amendment rights because the consent he gave was not voluntary. We review the district court's determination of the voluntariness of a consent to search for clear error. *United States v. Siwek*, 453 F.3d 1079, 1083 (8th Cir. 2006).

A warrantless search does not violate an individual's Fourth Amendment rights if that individual knowingly and voluntarily consents to the search, *United States v. Almendares*, 397 F.3d 653, 660 (8th Cir. 2005), or if the searching officer reasonably believes that the subject gave voluntary consent. *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998). Consent is voluntary if it results from "an essentially free and unconstrained choice rather than from duress or coercion." *Id.* (internal quotations omitted). To determine whether consent was voluntary, our cases look to

the "totality of circumstances," including both the characteristics of the consenting party and the environment surrounding the consent. *Id.* "Relevant characteristics of the consenting party include age, intelligence, and education; chemical intoxication (if any); whether the individual was informed of the right to withhold consent; and whether the suspect generally understood the rights enjoyed by those under criminal investigation." *Id.* Relevant characteristics of the environment include the length of time that the individual was detained and questioned, whether the police intimidated the individual, whether the individual relied upon promises or misrepresentations made by the police, whether the individual was in custody when the consent was given, whether the encounter occurred in a public or secluded place, and whether or not the individual objected to the search. *Id.*

Under this standard, the district court's conclusion that Eduardo's consent was voluntary was not clear error. When Eduardo gave his consent, he was twenty-six years of age and had obtained a General Educational Development diploma. He spoke English well and did not appear to be intoxicated. Although he was in custody, he had been informed of his *Miranda* rights and signed a form waiving those rights. He never tried to withdraw his consent during the searches, and he has not identified any misrepresentations or threats that were made to him.

Eduardo argues that his consent was nonetheless coerced because numerous law enforcement officers were present when he consented, and because they all drew their weapons when they entered the apartment. We disagree. The mere presence of multiple officers and weapons does not compel a finding that consent is involuntary. *See United States v. Saenz*, 474 F.3d 1132, 1136-37 (8th Cir. 2007); *Sanchez*, 156 F.3d at 878; *United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir. 1997). The officers here never used their weapons to coerce Eduardo to give consent. They drew their weapons only when they first entered the apartment, and holstered them once the scene was secure. Eduardo has not identified any behavior by the officers designed to intimidate him or to force him to cooperate, and he signed a written form that

-4-

granted them permission to search.  The district court did not clearly err in finding that Eduardo's consent was voluntary.

The judgment of the district court is affirmed.

_____