# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2460

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Leland Beasley, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 16, 2012
Filed: July 31, 2012

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

   A jury convicted Leland Beasley of eight counts of production of child pornography and two counts of attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), and two counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The district court[1] sentenced Beasley to 3,480 months imprisonment and a lifetime of supervised release.

_____

   [1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

On appeal, Beasley challenges the district court's denials of his motions to suppress and for a bill of particulars, an evidentiary ruling, a jury instruction, and his sentence. We affirm.

## I. BACKGROUND

Beasley owned and operated Gamestation Sector 19, a video game store in St. Louis, Missouri. Beasley's customers, mostly minors, paid to play video games on large-screen televisions. Beasley occasionally hosted "lock-ins" at the Gamestation store, where children stayed overnight playing games and sleeping on the floor or in chairs. Beasley testified he attended most of the lock-ins, but was never the only adult present. Gamestation employee Tim Douglas, who was 18 years old when he worked at the store, testified that, other than Beasley, Douglas always was the oldest person present during the lock-ins.

Beasley also planned to offer "reality gaming" services, including dinner theater events and a reality television show called "Sabotage." In preparation for the television show, Beasley and a minor child, M.H., traveled to various states to do photo shoots. Beasley also took at least one overnight trip to Wisconsin with R.I., a minor Gamestation customer.

On January 5, 2009, Lieutenant Gary Guinn of the St. Louis County Police Department (SLPD) received an allegation of child sexual abuse against Beasley. Lieutenant Guinn assigned the investigation to Detective Anthony Cavaletti. After a preliminary investigation, Detective Cavaletti and Lieutenant Guinn went to Gamestation to interview Beasley.

When Detective Cavaletti and Lieutenant Guinn arrived at Gamestation, they asked to speak with Beasley about a private matter. Beasley asked the customers to leave the store. Beasley was visibly nervous. The officers asked Beasley if he had a private computer. Beasley said he had a laptop, and signed a consent to search form

allowing the officers to search the laptop. SLPD officers subsequently searched the laptop and found no incriminating evidence.

Beasley agreed to come to the police station to answer some questions. Detective Cavaletti drove Beasley to the station, where Beasley was given <u>Miranda</u> warnings. Beasley orally waived his <u>Miranda</u> rights and signed a form waiving his right to remain silent and his right to an attorney. <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 467-74 (1966).

The officers interviewed Beasley for approximately two hours and fifteen minutes. Beasley admitted he had twice been arrested on suspicion of child molestation, but was not convicted of any crimes related to those charges. Beasley also admitted he sometimes traveled with minor boys, and had "accidentally" touched a child's penis. Further, Beasley said he had a "problem" and needed "help," but he would not tell the officers what his problem was because he was "embarrassed." The officers arrested Beasley at the end of the interview.

On January 13, 2009, Lieutenant Guinn met with Mary Day, Beasley's ex-wife. Day informed Lieutenant Guinn that in 2007 she discovered CDs in Beasley's vehicle which she believed contained child pornography. Day turned those CDs over to the St. Clair County (Illinois) Sheriff's Department. Lieutenant Guinn notified Detective Cavaletti, who retrieved the discs from St. Clair County. On January 16, 2009, Detective Cavaletti viewed the discs and confirmed they contained images of child pornography, including pornographic images of a minor Detective Cavaletti previously interviewed in connection with the case. The photographs appeared to be taken at Beasley's Gamestation store. Detective Cavaletti alerted Lieutenant Guinn concerning this discovery.

After his arrest, Beasley called Douglas and asked him to collect some of Beasley's personal items from Gamestation and take them to Beasley's mother, Leslie

Moss. These items included a duffel bag containing some of Beasley's laundry, a black camera bag containing a DVD recorder, a black lock-box, a digital camera, and a digital video recorder. Lieutenant Guinn learned of the call and decided to investigate.

On January 16, 2009, Lieutenant Guinn met Moss at her place of business and the two of them went to Moss's home. Moss informed Lieutenant Guinn that Beasley did not live in her home. Moss led Lieutenant Guinn into a back room and showed him the items Douglas delivered to Moss. Lieutenant Guinn asked if he could take the items, and Moss consented. The parties dispute whether Lieutenant Guinn searched through all the items at that time.

On January 19, 2009, Detective Cavaletti and Sergeant Matthew Brillos escorted Beasley to an interrogation room at police headquarters. Beasley had been in custody since January 5, 2009. The evidence seized from Moss's house was displayed on a table. The officers asked Beasley for permission to search the items. Beasley questioned whether the black lock-box was his, and Detective Cavaletti informed Beasley that Lieutenant Guinn had taken the box from Moss's home. Beasley signed a consent to search form without protest. The officers then read Beasley his rights under Miranda, and Beasley requested the assistance of an attorney. The officers terminated the interview and escorted Beasley back to his holding cell. This entire episode lasted approximately one hour.

SLPD officers searched the items and discovered numerous digital photographs and video images of child pornography. These images allegedly included pictures and video of Beasley performing or attempting to perform sexual acts on at least ten different minor boys, usually while they were asleep. Some of the images appeared to have been taken at Beasley's store or during Beasley's overnight travels with M.H., R.I. and others.

-4-

Beasley appeals his convictions seeking suppression of the seized evidence, attacking the district court's denial of his motion for a bill of particulars, and challenging the admission of certain trial evidence, a jury instruction, and his sentence.

## II.    DISCUSSION
### A.    Motion to Suppress

Beasley appeals from the district court's denial of his motion to suppress evidence he contends was obtained in violation of the Fourth Amendment and the Miranda rule.  We address Beasley's arguments in turn.

### 1.    Items Seized from Moss's Residence

Beasley argues the district court should have suppressed the evidence seized from Moss's residence because (1) Moss had no actual or apparent authority to consent to Lieutenant Guinn's seizure of the items; (2) the items were not properly seized under the plain view exception to the warrant requirement; (3) Beasley's consent to the search of the seized items was involuntary; and (4) Beasley's consent to the search of the items was an implied admission of ownership obtained in violation of the Fifth Amendment and Miranda.

### a.    Authority to Consent

Beasley asserts Moss had no authority to consent to Lieutenant Guinn's seizure of the items, relying on United States v. James, 353 F.3d 606, 613-15 (8th Cir. 2003) (deciding the individual in possession of the defendant's property lacked authority to consent to a police *search* of the property because the defendant had taken sufficient measures to protect his privacy interest in the property).  We reject Beasley's assertion because Lieutenant Guinn's seizure of Beasley's property was constitutionally reasonable for the reasons we recognized in United States v. Clutter, 674 F.3d 980 (8th Cir. 2012).

-

In Clutter, the defendant Christopher Clutter lived with his father, Joel Clutter. See id. at 982-83. On January 22, while Clutter was in police custody, the police came to suspect Clutter had images of child pornography on computer hard drives in his father's home. See id. The police received the father's permission to seize the computer equipment. See id. at 983. The police subsequently obtained a warrant to search these computers, and discovered child pornography. See id. Clutter moved to suppress, arguing his father lacked authority to consent to the seizure of the computers. See id. We recognized that, because the computers were not searched before the issuance of the warrant, the only issue was whether the computers had been "seized" in violation of the Fourth Amendment. See id. at 984.

We articulated four reasons the seizure of Clutter's property did not violate the Fourth Amendment. First, the seizure did not "meaningfully interfere with [Clutter's] possessory interests" in the property because Clutter was incarcerated when the seizure occurred and the possessor of the property, his father, consented. See id. at 984-85; see also United States v. Jacobsen, 466 U.S. 109, 113 (1984) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property."). Second, the police had probable cause to believe the computers contained child pornography. See Clutter, 674 F.3d at 985. Third, the police had a legitimate interest in preventing destruction of the potential contraband, and Joel Clutter specifically urged the officers to relieve him of possession of the potential contraband. See id.; see also United States v. Place, 462 U.S. 696, 701 (1983) ("Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime . . . the [Fourth] Amendment . . . permit[s] seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it."). Finally, "the officers reasonably relied on [the father's] actual or apparent authority to consent to a temporary seizure" because "the computers were located in an area of the home accessible to [the father], a former police officer who knew why [law enforcement]

wanted to seize the computers, signed consent forms, and urged the officers to take the computers with them." Clutter, 674 F.3d at 985.

Beasley's case is not materially different from Clutter. Beasley was in custody when Lieutenant Guinn took the property from Moss's home, and Moss consented, so there was no meaningful interference with Beasley's possessory interest. The nature of Beasley's property, his apparent efforts to conceal the property, and the other evidence of Beasley's production and possession of child pornography combined to give Lieutenant Guinn probable cause to suspect the items contained evidence of child abuse and child pornography. Finally, Lieutenant Guinn had a legitimate interest in preserving the evidence, and Moss had a legitimate reason to be rid of the suspect property. As in Clutter, "we conclude that the totality of the circumstances plainly support the district court's determination that seizure of [Beasley's property] was not constitutionally unreasonable."[2] Id.

### b.    Plain View

Alternatively, the items were validly seized under the plain view exception to the warrant requirement. "Under the plain-view exception, officers may seize an object without a warrant if they are lawfully in a position from which they view the

---

[2]We reject Beasley's contention the items were searched before Beasley signed the consent to search form on January 19. At the suppression hearing, Lieutenant Guinn testified, "we had the evidence displayed on the table" in the interrogation room when Beasley was asked to sign the consent form. Contrary to Beasley's arguments, this statement does not prove Lieutenant Guinn "unpacked the camera bag and laid out the contents on the table." Lieutenant Guinn testified he did not go through the items before January 19, other than the clothing bag he left with Moss, and neither the magistrate judge nor the district court found that the DVD recorder had been removed from the camera bag. "[T]he burden of proof is on the defendant who seeks to suppress evidence," Carter v. United States, 729 F.2d 935, 940 (8th Cir. 1984), and Beasley has not proved the officers searched the contents of the camera bag without Beasley's permission.

object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." United States v. Muhammad, 604 F.3d 1022, 1027 (8th Cir. 2010).

Beasley does not argue the incriminating nature of the objects was not "immediately apparent." We consider only whether Lieutenant Guinn's actions leading to the seizure were lawful. Moss invited Lieutenant Guinn into the house and escorted him to the back room where the items were located. Beasley did not live in Moss's home and had no expectation of privacy in the home or its back room. Nothing in the record suggests Moss lacked authority to give Lieutenant Guinn access to the room. We also reject Beasley's unsupported claim that Moss retrieved the items from the back room at Lieutenant Guinn's request. Lieutenant Guinn testified Moss "took me to a back room in the residence" where the items were located and Moss "identified several items." Nothing in the record suggests Moss brought the items to Lieutenant Guinn. Thus, Lieutenant Guinn was properly in a position to view what was in plain sight and therefore seize the suspicious items.

### c. Voluntariness of Consent to Search

Beasley proclaims his consent to search the items was not voluntary. "The voluntariness of a consent to a search is a factual question that is reviewed for clear error." United States v. Saenz, 474 F.3d 1132, 1136 (8th Cir. 2007). The government has the burden to prove the consent was voluntary by a preponderance of the evidence and based upon the totality of the circumstances. See id. at 1137.

Beasley maintains his consent to search was coerced because he was in police custody, was not given the Miranda warnings, and was subject to persistent police questioning. We consider whether a suspect received Miranda warnings before giving consent to a search, but even with a suspect in custody, "[w]e have not required an officer to provide [Miranda] warnings before requesting consent to search or held that an absence of [Miranda] warnings would make an otherwise voluntary

consent involuntary." Id. Here, the district court found "[n]o threats, promises, or deceptive measures were employed by the police, and [Beasley's] consent to the search was voluntary." Based upon the totality of the circumstances, the district court's factual findings were not clearly wrong, and its resulting conclusion that Beasley voluntarily consented to the search is supported by the record.

### d.    Consent to Search and Miranda

Beasley proposes his consent to search constituted an incriminating admission insofar as it "implied a statement of fact—namely that the equipment was his and that it was once in his possession and control." Beasley's proposition is that it was improper for the police to solicit this admission without first providing Miranda warnings. Therefore, according to Beasley, the consent to search was invalid, and the consent to search form and the evidence derived therefrom should be suppressed.

Even if we assume a Miranda violation, suppression of the resulting physical evidence is not the appropriate remedy. See United States v. Patane, 542 U.S. 630, 633-34 (2004) (plurality opinion) (holding the failure to give Miranda warnings does not require suppression of the physical fruits of voluntary statements thereby obtained); id. at 644-45 (Kennedy, J., concurring). Beasley argues the district court should have suppressed the consent to search form itself because "Beasley's form explicitly acknowledged his ownership, possession, and control of the recording equipment." Beasley's argument is defeated by the facts. The two consent to search forms Beasley signed on January 19 merely provided Beasley was consenting to a search of specifically described property. The forms do not expressly or inferentially acknowledge Beasley's ownership of the equipment. See Cody v. Solem, 755 F.2d 1323, 1330 (8th Cir. 1985) ("[A] consent to search is not an incriminating statement.").

### 2. January 5, 2009 Statements

Beasley contends the district court should have excluded his January 5, 2009 admissions at Gamestation and at the police station. Beasley's contention is wholly without merit. Nothing in the record suggests Beasley was interrogated at Gamestation, and Beasley has not identified any statements which were used against him at trial and were obtained before Beasley was given the Miranda warnings. Instead, the record reflects that, on January 5, Beasley voluntarily accompanied Lieutenant Guinn and Detective Cavaletti to the police station, where Beasley was given Miranda warnings. Beasley voluntarily waived his Miranda rights and agreed to answer the officers' questions. Only then did the officers question Beasley. Beasley offers nothing to undermine the district court's determination the statements were voluntary. No Miranda violation occurred. See, e.g., United States v. Nguyen, 608 F.3d 368, 374 (8th Cir. 2010) ("Miranda rights are triggered only when a defendant is being interrogated in police custody.")

### B. Bill of Particulars

Counts I through VIII of the indictment charged Beasley with conduct alleged to have occurred between March 1, 2006 and January 5, 2009. Count IX charged Beasley with conduct alleged to have occurred between April 11, 2002 and January 5, 2009. Beasley challenges the sufficiency of the indictment and the district court's denial of his motion for a bill of particulars clarifying the basis for the indictment, alleging the time frame listed in the indictments was indefinite and overbroad.

> An indictment adequately states an offense if: it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted.

United States v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009) (quoting United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008)) (internal marks omitted). "[W]e will find an indictment insufficient only if an 'essential element "of substance" is omitted.'" United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001) (quoting United States v. Mallen, 843 F.2d 1096, 1102 (8th Cir. 1998)).

> A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague or indefinite.

United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir. 2002). "We review the denial of a motion for a bill of particulars for an abuse of discretion," and will not overturn a conviction for want of a bill of particulars unless the defendant suffered actual prejudice due to surprise at trial. United States v. Huggans, 650 F.3d 1210, 1220 (8th Cir. 2011) (quoting United States v. Livingstone, 576 F.3d 881, 883 (8th Cir. 2009)).

Beasley claims a clarifying bill of particulars was necessary because the indictments covered such a broad time frame that he was unable to mount an adequate defense. Beasley also suggests the breadth of the indictments exposed him to the possibility of double jeopardy. While "prosecutors should be as specific as possible in delineating the dates and times of abuse offenses," "[f]airly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements" because of the inherent difficulties in investigating and prosecuting child abuse. Valentine v. Konteh, 395 F.3d 626, 632 (6th Cir. 2005). Beasley has failed to convince us the admittedly broad time frame reflected in the indictment

-11-

failed to "fairly inform [him] of the charges" in the unique circumstances of this case. Hayes, 574 F.3d at 472.

Beasley was not subject to unfair surprise at trial, nor was he prejudiced in his ability to put on an alibi defense. Because Beasley does not deny the government provided him, in advance of trial, with the images and video files forming the basis of the production of child pornography charges, Beasley cannot show he was surprised by the government's case against him. Beasley also has failed to show he was prejudiced in his ability to put on an alibi defense, because he did not explain what alibi defense he would have presented. Beasley testified he was usually present at the lock-ins and had traveled and stayed in hotel rooms with M.H. and also admitted to SLPD officers he had taken overnight trips with other minor boys. These admissions seem to preclude, or at least greatly undercut, any credible alibi defense. Beasley's arguments are simply "too speculative" to warrant relief. See United States v. Garrett, 797 F.2d 656, 665, 666 n.9 (8th Cir. 1986) (determining the defendant's unsupported allegation that the government's failure to comply fully with the district court's order granting a bill of particulars prejudiced his alibi defense was "simply too speculative to demonstrate prejudice").

Beasley also maintains the broad time frame encompassed in the indictment exposed him to the future possibility of double jeopardy. Beasley cites no cases in which we overturned a conviction on double jeopardy grounds merely because the otherwise valid indictment covered an overbroad time frame. Because the indictment was not "so defective that it cannot be said, by any reasonable construction, to charge the offense for which [Beasley] was convicted," Hayes, 574 F.3d at 472, we will not overturn Beasley's conviction on this basis. See also United States v. Stephenson, 924 F.2d 753, 762 (8th Cir. 1991) (rejecting as "speculative and premature" the defendant's challenge to the denial of a bill of particulars because there was no evidence the defendant was actually at risk of duplicative prosecution).

## C.  Opinion Testimony

Beasley argues the district court admitted improper opinion testimony from a lay witness.  In response to a government question regarding the average age range of Gamestation customers, Douglas testified over Beasley's personal knowledge objection: "It ranged from, I would say, seven to anywhere from—I don't know. There were some adults there too.  But I guess the average would have been 7 to 18ish."  The district court summarily overruled Beasley's objection.  We review the district court's evidentiary rulings for an abuse of discretion.  See United States v. Van Elsen, 652 F.3d 955, 958 (8th Cir. 2011).

A lay witness may give opinion testimony so long as the testimony is "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701.  It is clear from the context that Douglas was stating his personal opinion regarding the ages of the Gamestation customers, based on his observations as a Gamestation customer and employee.  The district court did not abuse its considerable discretion by allowing this lay opinion testimony.

## D.  Jury Instruction

Beasley objected to use of Eighth Circuit Model Criminal Jury Instruction 3.11 (2011), which defines the "reasonable doubt" burden of proof as "a doubt based upon reason and common sense, and not the mere possibility of innocence."  The district court overruled the objection and gave the challenged instruction.  On appeal, Beasley argues there is a reasonable likelihood jurors misinterpreted the instruction and held the government to a lower burden of proof.  We previously have rejected this argument, see United States v. Rosso, 179 F.3d 1102, 1104 (8th Cir. 1999) (affirming that the model instruction correctly states the burden of proof), and we will not depart from our previous ruling.

### E.    Sentencing

The United States Probation Office prepared a Presentence Investigation Report calculating an advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) combined adjusted offense level of 47 and a total offense level of 52. This calculation included enhancements under U.S.S.G. § 2G2.1(b)(1)(A), because the victim B.E.N. was under the age of twelve at the time of the offense, and U.S.S.G. § 2G2.1(b)(5), because Beasley exercised "care, custody, or supervisory control" over the minor victims.    The district court imposed within-Guidelines consecutive sentences of 360 months on counts I through VIII and count X, and 240 months on count IX, to be served concurrently with 120-month sentences on counts XI and XII. Beasley's total sentence is 3,480 months.

We review the district court's application of the Guidelines de novo, and its factual conclusions for clear error.  See United States v. Tyndall, 521 F.3d 877, 882 (8th Cir. 2008).  The preponderance of the evidence standard applies to the district court's factual findings.  See id. at 883.

### 1.    U.S.S.G. § 2G2.1(b)(1)(A) Enhancement

Beasley objected to the § 2G2.1(b)(1)(A) enhancement, arguing the evidence was insufficient to show the victim B.E.N. was under the age of twelve at the time of the offense.  The government introduced two digital video files that were produced by Beasley and allegedly depicted Beasley performing sex acts on B.E.N.  These files included a time and date stamp.  According to the date stamp, Beasley produced the first video on November 23, 2007, and the second video on June 16, 2008.  B.E.N. turned twelve on June 18, 2008.

Beasley contends the district court was not entitled to rely on the video date stamp because the date could manually be set by the user and there was no way of knowing whether the date stamps were accurate.  The government introduced evidence from which the district court could find the date stamps on these videos,

when adjusted for an eleven hour discrepancy, were accurate. A government expert testified that, at the time Beasley's camera was seized, the date setting was generally accurate, but the time setting was eleven hours fast. This expert reviewed other videos taken with this camera and noted they "looked like they were taken at night when the time would have suggested it was taken during the day." This expert also testified, based on the clothing and other visual clues in the videos, the date stamp seemed to reflect the correct time of the year when the videos were taken. The expert examined videos taken of the minor M.H. while Beasley and M.H. traveled together in January of 2007. These videos bore January 2007 date stamps. All of this evidence, cumulatively, was sufficient for the district court to find, by a preponderance of the evidence, that B.E.N. was not yet twelve years old when Beasley produced the videos.

### 2. U.S.S.G. § 2G2.1(b)(5) Enhancement

Beasley asserts the district court erred in applying U.S.S.G. § 2G2.1(b)(5), which applies when the victim is "in the custody, care, or supervisory control of the defendant." The official commentary notes this provision

> is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporary or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this adjustment, the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship.

U.S.S.G. § 2G2.1 cmt. n.3.

Beasley suggests the enhancement should not apply because he was merely a shop owner, not a caregiver or custodian of the minor patrons of his store. This

suggestion incorrectly focuses on the legal status, rather than the actual relationship, between Beasley and his victims. Beasley's victims attended overnight lock-ins at Gamestation, during which Beasley was the primary, and maybe the only, adult present. It was reasonable for the district court to find Beasley exercised at least as much "care, custody, or supervisory control" over these minors as would a teacher, baby-sitter, or day care provider. See id. The district court did not abuse its discretion in applying this enhancement.

### 3.    Substantive Reasonableness of the Sentence

Beasley challenges the district court's sentence as substantively unreasonable. We review the district court's sentencing decision under "a deferential abuse-of-discretion standard." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting Gall v. United States, 522 U.S. 38, 41 (2007)). A district court abuses its discretion when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Maxwell, 664 F.3d 240, 245 (8th Cir. 2011) (quoting Feemster, 572 F.3d at 461). Because the district court adopted a within-Guidelines sentence, we presume the sentence is reasonable, and Beasley carries the burden of rebutting this presumption. See United States v. Betcher, 534 F.3d 820, 827 (8th Cir. 2008).

Beasley alleges the district court did not give sufficient weight to Beasley's age and lack of criminal history. The district court explicitly considered Beasley's "history and characteristics," his lack of "any prior criminal convictions," his age, and "all of the information that [Beasley's] attorney . . . identified." The district court also considered the seriousness of Beasley's offense, noting Beasley "pursued . . . children insidiously and relentlessly," and Beasley "showed absolutely no remorse for any of the[] offenses or any insight into the damage [he] may have caused the[] children." Nothing in the record suggests the district court "committed a clear error

-16-

of judgment" in weighing the sentencing factors and adopting a within-Guidelines sentence of 290 years imprisonment.

Beasley also claims the sentence is greater than necessary to achieve the goals of sentencing. The district court was entitled, based on the seriousness of Beasley's crimes, to impose a within-Guidelines sentence ensuring Beasley remains incarcerated for life. See id. at 827-28 (affirming a convicted child pornographer's 750 year sentence, reasoning "[t]he absurdity of a 750 year sentence, or even a 10,000 year sentence, should not detract from the gravity of [the defendant's] crimes").

## III.  CONCLUSION

We affirm Beasley's conviction and his sentence.

———————————————