# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-3174
_____

United States of America

*Plaintiff - Appellee*

v.

Shawn Ratigan, also known as Father Shawn Ratigan

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: May 23, 2014
Filed: July 24, 2014
[Unpublished]
_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.
_____

PER CURIAM.

Shawn Ratigan pleaded guilty to four counts of production of child pornography and one count of attempted production of child pornography, in violation

of 18 U.S.C. § 2251(a).  The district court[1] imposed a 50-year sentence.  On appeal, Ratigan argues that his sentence is unreasonable.  We affirm.

Ratigan was ordained as a Catholic priest in 2004 when he was thirty-eight years old.  He thereafter served as a pastor at parishes in the Kansas City and St. Joseph, Missouri, areas. On December 15, 2010, Ratigan brought his laptop computer to a repairman, who came across several images of prepubescent girls.  When the repairman discovered a close-up image of a young girl's genital area, with her diaper pulled away to fully expose her vagina, he contacted the parish.  The next day, he showed a deacon the images he had discovered.  Thereafter, the deacon contacted the vicar general of the diocese, as well as Ratigan.

Ratigan denied knowing who had taken the pictures or who was depicted in them.  He told the deacon and the vicar general that he had received the laptop six years earlier from a friend.  The laptop was given to the diocesan director of management information systems, who viewed and preserved the images, copying several file folders to a flash drive.  She discovered hundreds of images of girls under the age of ten.  Ratigan's Internet history revealed that he had bookmarked a photo-sharing website that contained images of children in swimsuits.  Ratigan also had visited websites advertising two-way mirrors and so-called spy pens, which are cameras disguised to look like ballpoint pens.  Moreover, the laptop was not six years old, which led the director to surmise that Ratigan was being untruthful about when he had obtained it.  The director advised the vicar general to contact both the police and the diocesan attorney, and she made hard copies of several images to serve as examples of the most explicit pictures.  The diocesan attorney opined that the images were not pornography.  Church officials did not submit the laptop or images to the police, despite the director's reiteration of her concerns.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

On December 17, 2010, Ratigan attempted to commit suicide. He was treated for carbon monoxide poisoning and later was moved to a psychiatric unit within the hospital. After Ratigan's release in late December, he moved in with his mother and later moved to Independence, Missouri, where he was assigned to serve as a chaplain to Franciscan nuns. The bishop referred Ratigan to counseling, and Ratigan entered into an agreement that placed certain restrictions on his ministry, namely, that he would avoid all contact with children, that he would not use any computer without a valid provision for oversight, and that he would not take pictures of children.

Within months of entering into the agreement, Ratigan violated the restrictions set forth above. He attended a child's birthday party; he went to a parade, where the school associated with his former parish had sponsored a float; he accessed social networking sites; he used a camera to take pictures of a girls gymnastics program as it was being shown on television; and he purchased a digital camera and a laptop computer. There were also rumors circulating within his former parish that he was no longer its pastor because the school principal was "out to get him," but that he would soon return to parish work.[2]

---

[2]The diocese previously had been advised of concerns regarding Ratigan's behavior with children. By letter dated May 19, 2010, the school principal set forth three categories of concerns: inappropriate physical contact with children, general inappropriate behavior, and general concerns. The principal relayed that Ratigan allowed elementary school girls to sit on his lap, to climb on him, grab his legs, and reach into his pocket for candy. The principal explained that parents had expressed concern that Ratigan took too many pictures of the children and that he had communicated with some of the students via Facebook. The principal's letter reported that Ratigan spent long periods of time at the school and was "usually present at arrival time, during morning prayer, recess, lunch, dismissal, and after school." The vicar general reviewed the letter with Ratigan, but the diocese took no disciplinary action.

In May 2011, the vicar general decided to contact the police. After he did so, he learned that the diocesan attorney had returned the laptop to Ratigan's family at the bishop's request and that the computer had been destroyed. The attorney, however, remitted the flash drive containing several file folders from the laptop. On May 18, Ratigan was arrested and transported to the police station. While the detective was setting up recording equipment and Ratigan was alone in the interrogation room, Ratigan took his cellular phone from his pocket. He removed the SIM card and disposed of it. He then held the phone under the table and began pressing buttons before the detective entered the room to confiscate the phone. The SIM card was never found.

A search of Ratigan's electronic media revealed images of child pornography. Ratigan was charged in a thirteen-count indictment and pleaded guilty to the five counts set forth above. The counts of conviction involved images of five different victims that were produced between 2005 and 2009. Jane Doe 1 was a relative of Ratigan's. She was six years old when he produced a series of images that began with close up shots of her vaginal area clothed in a wet swimsuit and ended with an image of her swimsuit pushed to one side and her legs spread, revealing her bare vagina. Ratigan produced images of Jane Doe 2 over the course of three years. He produced an image of her naked backside when she was two years old. Ratigan had used his thumb to pull her left buttock aside to reveal part of her labia. In another image, Jane Doe 2 sat on a chair, naked from the waist down, with her legs spread. Jane Doe 3 was also a relative of Ratigan's. She was five years old when Ratigan produced images of her sitting between his legs, naked from the waist down, with her legs spread to expose her vagina. Other images of Jane Doe 3, depict her vagina, with Ratigan's hand pulling her thigh or buttocks to the side or his hand spreading her labia. Jane Doe 4 was seven years old when Ratigan produced a series of images of her wearing a swimsuit, including an image of her partially exposed vagina. Jane Doe 5 was eight or nine years old when Ratigan photographed her. Some of the images depict Jane

Doe 5 sleeping, with Ratigan's hand pulling her underwear away from her body to expose her vaginal area.

Ratigan's advisory sentencing range was calculated under the United States Sentencing Guidelines (Guidelines or U.S.S.G.). His total offense level was 43, his criminal history category was I, and his advisory Guidelines sentencing range was life imprisonment. The statutory maximum term of imprisonment for each count of conviction was 30 years' imprisonment. 18 U.S.C. § 2251(a). Ratigan asked to be sentenced to the statutory minimum sentence of 15 years' imprisonment; the government requested a 50-year sentence.

Defense counsel argued that a 15-year sentence would be "[t]he better part of the rest of [Ratigan's] life[,]" given his age and continued problems with diabetes and high blood pressure. Sentencing Tr. 14. Counsel asked the court to consider Ratigan's family's long history of service to the Catholic church as well as Ratigan's close relationship with his father. Ratigan spent years caring for his father, who suffered from debilitating depression and later, cancer. When Ratigan was no longer able to provide the care his father needed, he placed his father in a nursing home, a decision that angered his father, who thereafter did not speak to Ratigan. Ratigan then became a priest, earning a degree in liberal arts and a master's degree in divinity.

Counsel argued that Ratigan was "cured now" and that he would be able to lead a law abiding life after serving a 15-year sentence. Id. at 18. Counsel also noted that Ratigan had dedicated his life to the church, but after church officials discovered the images on his laptop, a time "[w]hen he needed the church to support him, they weren't there and then he made the decisions that he made." Id. at 17. Counsel conceded that Ratigan's conduct required a lengthy prison sentence, but argued that a 50-year sentence—the equivalent of a life sentence for Ratigan—was too severe. Ratigan submitted evidence in support of his sentencing position, including a report by a mitigation specialist; hospital, counseling, and psychiatric records; documents

setting forth Ratigan's history in the seminary and pastoral internships; and letters in support of Ratigan. Two members of his family and a priest also spoke on his behalf. Ratigan then apologized to the children and their families, to his own family, and to the church. He concluded by acknowledging that he deserved a 15-year sentence, but pleading for a sentence of less than life.

In support of its request for a 50-year sentence, the government submitted the images described above, the letter from the school principal, and images to show that Ratigan began violating the restrictions that were placed upon him by the diocese almost immediately after entering into the agreement. Jane Doe 2's parents spoke at the sentencing hearing, testifying how they had "watched [their] happy, outgoing, vibrant little girl grow depressed, withdrawn, terrified, and very anxious." Id. at 41. The mother spoke of the pain of viewing the images and the blame that she put on herself for allowing Ratigan near her daughter. The father asked for a 50-year sentence, "We're talking about our two-year-old daughter. In 50 years my daughter will still be here dealing with it. I don't know what to tell her." Id. at 47. In closing, the government emphasized that Ratigan was a serial offender, who had abused five different victims over the course of six years.

The district court imposed a 50-year sentence, finding that it "[was] a reasonable and appropriate sentence taking into consideration all of the factors set forth under 18 U.S.C., Section 3553(a), also considering the guideline recommended punishment, the statutory ranges."[3] Sentencing Tr. 52.

In reviewing a defendant's challenge to his sentence, we "must first ensure that the district court committed no significant procedural error[.]" Gall v. United States,

---

[3]Ratigan was convicted of counts 1, 4, 8, 11, and 12. The district court imposed a 15-year sentence on count 1, a consecutive 20-year sentence on count 4, a consecutive 15-year sentence on count 8, and concurrent 15-year sentences on counts 11 and 12, for a total term of imprisonment of 50 years.

552 U.S. 38, 51 (2007). Ratigan argues that the district court committed procedural error "by failing to acknowledge the parsimony principle imbedded in 3553(a) and by failing to provide an adequate basis for the imposition of such a draconian sentence." Appellant's Br. 7. Although the district court did not state that it was imposing "a sentence sufficient, but not greater than necessary," to comply with the sentencing goals of § 3553(a), it was not required to do so. See United States v. San-Miguel, 634 F.3d 471, 474-75 (8th Cir. 2011) (rejecting the defendant's argument that the district court failed to explain adequately the sentence it imposed because it "never referred to the parsimony principle of section 3553"). The transcript makes clear that the parsimony principle guided the district court in sentencing Ratigan and that, given the serious nature of his offenses, the fact that he was not deterred by the restrictions placed upon him by the diocese, the need to protect the public, and his significant abuse of trust and authority, a 50-year sentence was warranted.

> I believe the record reflects that you are a pedophile and that you have engaged in serious sexually deviant behavior in a serial fashion affecting many individuals, speaking of the young children as well as their families. . . . You abused authority in a manner that is as offensive and difficult to understand as any. You befriended the children and you befriended their families in order to satisfy your sexual impulses. You betrayed yourself. You betrayed the church that you were sworn to serve, and you certainly betrayed the children and their families as well as your entire congregation.

Sentencing Tr. 51. The district court sufficiently explained its reasons, and we find no procedural error in the imposition of Ratigan's sentence.

We review the substantive reasonableness of a sentence under a "deferential abuse-of-discretion standard." Gall, 552 U.S. at 41. "A district court abuses its discretion when it fails to consider a relevant factor, gives significant weight to an irrelevant or improper factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited

range of choice dictated by the facts of the case." <u>San-Miguel</u>, 634 F.3d at 475 (quoting <u>United States v. Jones</u>, 509 F.3d 911, 913 (8th Cir. 2007)).

Ratigan contends that the district court would have imposed a lesser sentence if it had given more careful consideration to his personal characteristics. Ratigan, however, submitted significant documentary evidence of the circumstances of his family life, his dedication to the Catholic church, his education, his age, and his physical and mental health, all of which the district court had reviewed. Moreover, the district court heard the testimony in support of Ratigan, as well as defense counsel's argument that—in light of Ratigan's personal characteristics and positive attributes—a 15-year sentence would satisfy the sentencing purposes set forth in 18 U.S.C. § 3553(a). The record thus indicates that the district court carefully considered Ratigan's personal characteristics, and Ratigan has failed to show that the district court abused its discretion in imposing a 50-year sentence. <u>See, e.g.</u>, <u>United States v. Beasley</u>, 688 F.3d 523, 536 (8th Cir. 2012) (holding that the district court acted within its discretion when it imposed the equivalent of a life sentence based on the seriousness of the defendant's child pornography crimes).

The sentence is affirmed.

_____