# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————————

No. 11-1771

—————————

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  Northern District of Iowa. |
| Kevin McManaman, | * |
| | * |
| Defendant - Appellant. | * |
| | * |

—————————

Submitted: October 18, 2011
Filed: March 14, 2012

—————————

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

—————————

MELLOY, Circuit Judge.

Appellant Kevin McManaman entered a conditional plea of guilty to two counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and (e), and was sentenced to 276 months' imprisonment. McManaman reserved the right to appeal the district court's[1] denial of his motion to suppress evidence. On appeal, he argues that the district court erred when it denied his motion to suppress statements

---

[1]The Honorable Judge Mark W. Bennett, United States District Judge for the Northern District of Iowa.

and physical evidence obtained in violation of his Fourth, Fifth, and Sixth Amendment rights. We affirm.

I.

On March 25, 2008, a grand jury indicted McManaman on various gun and drug charges based on admissions he had made in 2005 and 2006 to agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. A week later, on April 2, 2008, federal and state law enforcement officers arrived at McManaman's home with an arrest warrant issued in connection with that indictment. Special Agents Todd Monney and Zane Dodds approached McManaman's porch while other officers took up positions around the house. The agents had a "breaching tool" in case occupants refused to open the door, but after a knock, McManaman came to the door, followed by his wife, Tina Frye. Monney informed McManaman of the warrant, and because of the presence of children inside the home, requested that McManaman step out onto the front porch.

On the porch, officers placed McManaman under arrest and patted him down. Inside his pockets they found a marijuana pipe and a methamphetamine pipe. Before informing McManaman of his rights, Dodds asked him if there was anything else illegal inside his home that officers should be concerned about. After a pause, McManaman sighed and eventually told officers that there was a shotgun in his basement. He offered to have his wife go retrieve the gun, but officers informed him that one of them would have to accompany her into the house to get it. McManaman informed Frye where the gun was located, and she led Dodds around the side of the house and into the basement.

While in the house, Dodds encountered a locked door and asked Frye if he could search the room inside. Frye indicated that the door must have been accidentally locked and that they usually used a screwdriver to open it. Using a

pocket knife provided by another officer, Frye opened the door. Inside the room, officers observed a closet door locked with a padlock, for which Frye indicated she did not have a key. Agent Monney, who had joined them in the house, asked Frye if he could take the door off its hinges to open it, and she gave him permission to do so.

Inside the closet, there were boxes, a stack of magazines, and some videotapes. While searching the contents of the closet, Monney rummaged through the boxes and magazines. Mixed in with the magazines were several color photographs that Monney characterized as depicting young nude females. It is unclear whether the photographs were folded, face up, or tucked inside the pages of the magazines. In one box, Monney also found a videotape labeled with McManaman's minor step-daughter's name and the words "Home XXX Edit." Frye initially told officers to "get rid of" the items in the closet, though she refused to sign a consent form on the matter, and she later denied having ever consented to the search in the first place.

McManaman was taken to the county jail that night, where he was eventually advised of his rights. After officers had finished searching his home, they interviewed McManaman in jail about the indictment and the additional evidence they had found. McManaman made certain admissions about the child pornography, which led to a subsequent search of his home the next day. In a tape recorded conversation, Tina Frye consented to this subsequent search, and officers retrieved a computer hard drive with additional evidence.

The district court proceeded with the gun and drug charges in 2008 and didn't consider the child pornography at that time. After a suppression hearing, a magistrate judge[2] found that Agent Dodds' question on the front porch had violated McManaman's Fifth and Sixth Amendment rights but concluded these violations

_____

[2]The Honorable Paul A. Zoss, United States Magistrate Judge for the Northern District of Iowa.

-3-

ultimately did not require the suppression of the shotgun[3] found during the search of the home because of the inevitable discovery doctrine. The drug paraphernalia found in McManaman's pocket when he was arrested would have provided sufficient probable cause for a search warrant of the house, and the judge concluded that the gun would have ultimately been discovered once a warrant was obtained. In adopting the magistrate judge's report and recommendation, the district court concluded:

> Although the court finds this to be an exceedingly close question, the court finds both prongs of the inevitable discovery doctrine are satisfied. With respect to the first prong, it seems certain that the law enforcement officers would have sought a search warrant for defendant McManaman's home upon finding the marijuana pipe and methamphetamine pipe on his person. The more difficult question is whether a neutral magistrate would have issued a warrant based on the information [independent of the Fifth and Sixth Amendment violation]. The court concludes that a finding of probable cause is satisfied here and that a neutral magistrate would have issued a search warrant for defendant's home.
>
> . . . .
>
> The second prong of the doctrine is also established. Apart from arresting defendant McManaman on an arrest warrant, upon finding drug paraphernalia on his person, the officers were engaged in ascertaining defendant McManaman's current involvement with drugs. The court finds such substantial, alternative line of investigation satisfies the test in this case.

---

[3]Though it was not suppressed by the court, the shotgun was never offered into evidence. Transcripts of the suppression hearing show that the parties understood their arguments about exclusion were more relevant to the pornography, which would be offered into evidence at a later trial.

United States v. McManaman, No. 08-CR-4025-MWB, 2008 WL 2704557 at *7–8 (N.D. Iowa July 3, 2008). After the district court denied his motion to suppress, McManaman pled guilty to three of the six drug and firearm counts against him and was sentenced to 75 months' imprisonment. McManaman is currently serving that sentence.

On May 21, 2010, a grand jury returned an eight-count indictment related to the child pornography that was discovered after McManaman's arrest. The court held an evidentiary hearing on August 17, 2010, where McManaman sought to suppress all of the evidence gathered during the two searches of his home, based on the court's 2008 finding that his Fifth and Sixth Amendment rights had been violated. McManaman also argued that his wife did not consent to the warrantless search, and that she did not have the authority to consent to a search of the locked closet. Because his 2008 hearing had already established that officers could and would have obtained a search warrant to look for guns, drugs, and ammunition, the magistrate judge found that McManaman was collaterally estopped from renewing a challenge to the likelihood of obtaining a search warrant. McManaman was still allowed to challenge whether the pornography would have been inevitably discovered in such a search, however the magistrate concluded that the pornography would have also been inevitably discovered in plain view during a lawful search. The magistrate judge concluded that this finding made moot McManaman's other constitutional arguments. The district court adopted the magistrate judge's report and recommendation over McManaman's objections and denied his motion to suppress. McManaman entered a conditional plea of guilty to counts one and two of the indictment and was sentenced to 276 months' imprisonment, to be served consecutively with the 2008 sentence. McManaman appeals the denial of his motion to suppress.

II.

McManaman argues on appeal that the district court erred in denying his motion to suppress because the government failed to establish that the child pornography would have been discovered by lawful means. In reviewing a denial of a motion to suppress, the court reviews the district court's legal conclusions de novo, and the court reviews the district court's factual findings for clear error. United States v. Vanover, 630 F.3d 1108, 1113–14 (8th Cir. 2011).

Courts use the suppression of evidence under the exclusionary rule as a remedial device that is "'restricted to those areas where its remedial objectives are thought most efficaciously served.'" Segura v. United States, 468 U.S. 796, 804 (1984) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" Id. (citations omitted). To have evidence that was obtained after a constitutional violation admitted into court, the government must show that it was not obtained "by exploitation of that illegality [but] instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488 (1963). Evidence is purged of taint and should not be suppressed "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984).

We have held that this inevitable discovery exception applies when the government proves "by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." United States v. Conner, 127 F.3d 663, 667 (8th Cir. 1997). But see

United States v. Thomas, 524 F.3d 855, 860–63 (8th Cir. 2008) (Colloton, J., concurring) (arguing that this two-pronged test is both over- and underinclusive, and that it is not consistent with Nix v. Williams). In this analysis, "it is important to focus not on what the officers actually did after unlawfully recovering evidence, but on what the officers were reasonably likely to have done had the unlawful recovery not occurred." United States v. Villalba-Alvarado, 345 F.3d 1007, 1020 (8th Cir. 2003).

McManaman advances two arguments why he believes the government failed to meet its burden under the first prong. McManaman believes the discovery was not inevitable because there was no probable cause that would have supported a search warrant, and therefore no lawful search would have occurred. In the alternative, assuming a search warrant would have been obtained, McManaman contends the child pornography was outside of the likely scope of any such warrant, and that officers would not have been able to lawfully obtain the evidence. With respect to the second prong, McManaman argues the record lacks sufficient evidence of a substantial, alternative line of investigation.

Because the district court's 2008 order already found that the existence of probable cause and a substantial, alternative line of investigation satisfied both the first and second prongs, McManaman must clear the hurdle of collateral estoppel before these arguments can be considered. "We apply the doctrine of collateral estoppel when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action." Ripplin Shoals Land Co. v. U.S. Army Corps of Eng'rs, 440 F.3d 1038, 1044 (8th Cir. 2006). Although usually applied in civil cases, we have applied collateral estoppel in criminal cases against criminal defendants. See United States v. Rosenberger, 872 F.2d 240, 242 (8th Cir. 1989).

McManaman does not dispute that all four estoppel factors are present in this case. However, he contends that due process implications should prevent us from following Rosenberger's holding. In Rosenberger, the court was not unsympathetic to the due process implications of estopping a criminal defendant, but nonetheless concluded there was "no reason . . . for avoiding the doctrine's application" so long as courts "closely examine the prerequisites of the estoppel doctrine in the context of criminal cases." Id. We have elsewhere noted that "'the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.'" United States v. Torres-Villalobos, 487 F.3d 607, 617 (8th Cir. 2007) (quoting Hernandez-Uribe v. United States, 515 F.2d 20, 22 (8th Cir. 1975)). The Rosenberger court, however, concluded that estoppel was appropriate when a defendant did nothing more "than reargue the assertions he made" in the earlier suit and offered "[n]o new evidence or changed circumstances." Rosenberger, 872 F.2d at 242.

Like the defendant in Rosenberger, McManaman has offered no new evidence or argument that would cast doubt on the district court's ruling as to either prong of the inevitable discovery issue. Instead, he asks the court to revisit what the district court originally identified as an "exceedingly close question." Even if we were to reach the merits of McManaman's argument, he offers no persuasive argument why we should come to a different conclusion. McManaman's argument on the merits—now, as it was in 2008—is that officers would not have had probable cause to obtain a search warrant and were not engaged in an alternative line of investigation because they had no knowledge about any gun or drug transactions since 2005. Such stale information, he suggests, does not point to a fair probability that contraband will be found. This argument, however, significantly downplays the drug paraphernalia that was found on McManaman's person the night he was arrested. We have previously stated that the existence of drug paraphernalia "in or around a suspect's house is significant on the issue of probable cause." United States v. Hernandez Leon, 379 F.3d 1024, 1028 (8th Cir. 2004). The district court weighed McManaman's

criminal history along with the evidence found incident to his arrest—which suggested current possession of drugs—when it decided whether probable cause existed and whether the agents were pursuing a substantial, alternative line of investigation. McManaman fails to offer a compelling reason for us to reconsider the district court's 2008 ruling.

Because McManaman is collaterally estopped from contesting the inevitable discovery issues already addressed in his original conviction, we move to the one argument that is new to the present case: that the evidence of child pornography would have been outside the scope of a properly obtained search warrant. Any search warrant that would have been issued would have been limited to evidence for guns, drugs, or ammunition. However, if officers inadvertently discover illicit evidence during a lawful search that is outside the scope of a search warrant, they are not required to ignore it. Coolidge v. New Hampshire, 403 U.S. 443, 467–68 (1971) ("Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience . . . to require them to ignore it until they have obtained a warrant particularly describing it."). Instead, we apply the "plain view" doctrine when "police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." Id. at 465.

"Under the plain-view doctrine, police are permitted 'to seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself.'" United States v. Alexander, 574 F.3d 484, 490 (8th Cir. 2009) (quoting United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997)). McManaman argues that the prosecution failed to establish that the illegality of the pornography was immediately apparent because the officers had no reason to search through the magazines and tapes. McManaman believes that once police saw the box

was filled with magazines and pictures, rather than drugs or guns, the police were prohibited from going through the box. He cites Arizona v. Hicks, 480 U.S. 321, 325 (1987) to support his argument that the police could not have searched the box of magazines under the plain view doctrine because they had to manipulate the evidence, and therefore it couldn't be "immediately apparent" that illicit pictures were present. But Hicks dealt with a warrantless search, and it therefore has no bearing on whether police could have searched through the box with a valid search warrant.

Under a warrant to search McManaman's home for guns, drugs, and ammunition, officers would have had the authority to search in any closet, container, or other closed compartment in the building large enough to contain the possible contraband. See United States v. Ross, 456 U.S. 798, 820–21 (1982). We have applied the plain view doctrine in similar circumstances where a search warrant "authorized the police to seize, among other things, drugs and drug paraphernalia, either of which could have been stored in a box in a closet. The police were, therefore, acting within the scope of the warrant when they opened the box containing [incriminating] photos." United States v. Evans, 966 F.2d 398, 400 (8th Cir. 1992). Even if the pictures in the present case were folded up in the box, it seems reasonable to conclude, as the magistrate judge did, that "officers would have had reason to unfold the documents to determine whether they contained drugs, which often are contained within folded pieces of paper." United States v. McManaman, No. CR10-4024-MWB, 2010 WL 3717288 at *7 n.2 (N.D. Iowa Sept. 15, 2010).

The officers came across the photographs and the videotape with McManaman's step-daughter's name on it within the scope of a search that would have been proper had they obtained a search warrant. Because the incriminating nature of this evidence was immediately apparent to the officers, they were entitled to seize it under the plain view doctrine. Therefore the district court did not err in denying McManaman's motion to suppress because of the inevitable discovery doctrine.

-10-

McManaman argues that the district court erred in denying his motion to suppress because the search that uncovered the evidence would not have happened but for Agent Dodds' question about "anything else illegal" in the house, which he contends was a violation of his Fifth and Sixth Amendment rights. McManaman also argues that Tina Frye did not consent to the warrantless search, that she did not have the authority to consent to such a search, and that the search therefore violated his Fourth Amendment right. McManaman argues that all of the evidence obtained during the two searches of his house, as well as the admissions he later made about this evidence while at the county jail, were "fruits" of these alleged constitutional violations and should have been suppressed.

Though the district court responded to and rejected each of these arguments on their merits, it acknowledged that such analysis was superfluous in light of its holding on the inevitable discovery of the evidence. Evidence should only be excluded if the "illegality is at least a but-for cause of obtaining the evidence." United States v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007). Because the district court found that the evidence would have inevitably been discovered even had Dodds not asked McManaman about anything illegal in the house, the agent's question was not a but-for cause of obtaining the evidence. Even if we found error in the district court's conclusion that no constitutional violations warranted the suppression of evidence, it would not change the outcome of McManaman's case. "[W]hen, as here, the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." Nix, 467 U.S. at 448. Because we find that the evidence is admissible pursuant to the inevitable discovery doctrine, McManaman's constitutional-violation arguments are moot, and we need not consider them on appeal.

## IV.

Accordingly, we affirm the decision of the district court.

_____