UNITED STATES of America,
Plaintiff,

v.

Adrian Romal LOMAS, Defendant.

No. 3:14–cr–00041–JEG

United States District Court,
S.D. Iowa, Davenport Division.

Signed April 14, 2015

Richard D. Westphal, Clifford R Cronk, III, United States Attorney's Office, Davenport, IA, for Plaintiff.

## ORDER

JAMES E. GRITZNER, Senior Judge

This matter comes before the Court on Motion to Suppress Evidence, ECF No. 39, by Adrian Romal Lomas (Defendant). The Government resists. The Court held a hearing on the Motion on March 26, 2015. Attorney Clifford R. Cronk III was present on behalf of the Government and attorney Terrence McAtee was present on behalf of Defendant. The Motion is fully submitted and ready for disposition.

## I. BACKGROUND

The Grand Jury returned a one count indictment against Defendant on July 15, 2014. The Indictment alleges that, in violation of 18 U.S.C. § 2113(a), Defendant used force, violence, and intimidation to take United States currency from the control of Family Credit Union. Defendant plead not guilty.

Davenport Police applied for and obtained two state search warrants relevant to this case.[1] The first warrant, which a state magistrate judge in Scott County, Iowa issued on June 11, 2014, authorized a search of the records of Cellco Partnership/Verizon Wireless relating to a specific phone number. Specifically, the search warrant application requested information from Cellco Partnership/Verizon Wireless including the suspect's personal contact information, the content of his text messages, call records, stored voicemail messages and photos, and the ability to "ping" Defendant's phone to determine his location.

The application for the search warrant contains an affidavit of Detective T. Murphy. The undated affidavit asserts that on

---

1. Both parties included the search warrant applications as exhibits to their briefs on the present motion.

June 6, 2014, police officers responded to a robbery at Family Credit Union in Davenport, Iowa. The affidavit continues that police learned two suspects entered the credit union, presented a gun, and demanded money. A witness told police that he or she saw the suspects get into a van with Iowa license plate number 814 XBH. The witness reported the van driver was a white female.

The affidavit implies the police determined the car was registered to Danielle Levetzow, who matches the witness's description of the van driver. The police took Levetzow into custody and the affidavit asserts she admitted to driving two men to the credit union. The affidavit continues, "She identified one of the suspects as her live in boyfriend, Adrian Lomas, but claimed to not know the name of the other suspect who entered the bank. Lomas did match the description of one of the suspects." Def. Ex. A 3, ECF No. 39–2. Levetzow also supplied the police with what she said was Defendant's phone number. Levetzow consented to a search of her phone and the same number was saved under the name "Adrian Love."

On June 18, 2014, a state court magistrate issued the second search warrant, which authorized forensic analysis of a cell phone the police believed belonged to Defendant and the phone of GY, described as a fifteen-year-old person of interest. Def. Ex. B 3, ECF No. 39–3. Like the first application, the second application contains an affidavit of Detective Murphy.[2] This affidavit contains similar assertions as Detective Murphy's first affidavit. In addition, it explains that after serving the June 11 warrant on Verizon, the police were able to determine that the phone was in an area of Moline, Illinois. The police located Levetzow's van behind a hotel in this area of Moline.[3] The affidavit continues that the police set up surveillance at the hotel and Defendant eventually walked out of the room, at which time the police arrested him.

The affidavit also asserts that Levetzow gave her consent for the officers to search the room. As discussed in more detail below, at the hearing on this Motion, Levetzow consistently testified that, although she was initially handcuffed, she voluntarily gave her oral and written consent for the police to search the hotel room.[4] The search warrant affidavit reports that Levetzow's twelve-year old daughter and GY were also present in the room. The police discovered several cell phones, including one belonging to Levetzow's daughter. The police then obtained consent from Levetzow's daughter to search her phone and the police discovered Facebook messages, which the affidavit asserts inculpates Lomas, Levetzow, and GY.

## II. DISCUSSION

Defendant's Motion argues the Fourth Amendment and the exclusionary rule re-

2. The affidavit actually provides the affiant's name is "your name here" and the application contains extraneous information that is only relevant to child pornography investigations. Def. Ex. B 4–5, ECF No. 39–3. Despite this, the affiant's signature appears to match Detective Murphy's signature on the June 11, 2014 search warrant. Compare Def. Ex. B 3, with Def. Ex. A. 1. These errors are not at issue.

3. Testimony at the hearing as well as the affidavit of FBI Special Agent Stephanie Post,

which accompanies the criminal complaint in this case, indicates the police went to the Moline hotel and arrested Defendant on June 11, 2014.

4. The written consent form was admitted into evidence at the hearing as Government Exhibit 1. The form is dated June 10, 2014. Testimony at the hearing established that Levetzow actually signed the form on June 11, 2014.

quire suppression of several items of evidence. First, Defendant argues that, in violation of Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Davenport police deliberately or recklessly omitted material information from the search warrant applications.[5] If the information had been included, Defendant continues, it would be clear there was no probable cause for the warrants and the Court must void them both.

Defendant asserts Officer Murphy's affidavits failed to report additional statements Levetzow made to the police on June 6, 2014, including:

A. On the date of the bank robbery, she had no idea what was going on and she had been with her mother for most of the day;

B. She did not know where Mr. Lomas had been

C. Mr. Lomas had told her that he was going to buy "weed."

Def.'s Br. 4, ECF No. 39–1. Defendant further emphasizes that the affidavits failed to mention that the police accused Levetzow of not telling the truth during portions of the June 6 interview and the police did not find her entirely credible.

Franks outlines a detailed procedure for challenging allegedly false statements in search warrant applications. The Supreme Court instructed:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the

defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Franks, 438 U.S. at 155–56, 98 S.Ct. 2674. The Eighth Circuit has repeatedly recognized that "[t]he holding of Franks v. Delaware also applies to material that has been deliberately or recklessly omitted from a search-warrant affidavit." United States v. Butler, 594 F.3d 955, 961 (8th Cir. 2010).

The defendant's burden to show a "deliberate or reckless falsehood is 'not lightly met.'" Id. "A showing of negligence or innocent mistake is not enough to establish a Franks violation." Id. A statement or omission is made with reckless disregard for the truth if "after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. Even assuming that the information a defendant contends is missing from a search warrant application was intentionally or recklessly omitted "[s]uch a finding alone is legally insufficient to justify a Franks hearing absent a determination that the intentionally or recklessly omitted information may have rendered the affidavit misleading and may have otherwise made a probable cause finding unsupportable." United States v. Williams, 477 F.3d 554, 558 (8th Cir. 2007).

---

**5.** Although the Court denied Defendant's request for a Franks hearing on the record during the hearing on Defendant's Motion, for the sake of clarity the Court will briefly address the Franks issue here.

■ At the hearing, the Court heard argument on Defendant's Motion, but declined to hear further evidence on the Franks issue. Defendant failed to make a substantial preliminary showing that the police omitted material information from the search warrant affidavit knowingly and intentionally or with reckless disregard of the truth. The validity of the warrant is not materially impacted by the practice that police officers often doubt portions of statements given to them during interrogations. There is no indication here that the police disbelieved the critical portions of Levetzow's statement, which concerned the identity of the person observed getting into her car at the credit union, and which were consistent with other information. Furthermore, there is no basis to infer the police were reckless as the information the affidavit omitted was not " 'clearly critical' to the finding of probable cause." Id. at 559 (citation omitted).

■ Moreover, even if the material Defendant contends was recklessly omitted had been included, the warrants would have been supported by probable cause. An affidavit supporting a search warrant "must provide the magistrate with a substantial basis for determining the existence of probable cause" and "wholly conclusory statement[s]" are inadequate. Illinois v. Gates, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "An affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish 'a fair probability that contraband or evidence of a crime will be found in a particular place.' " United States v. Darr, 661 F.3d 375, 380 (8th Cir. 2011) (quoting Gates, 462 U.S. at 238, 103 S.Ct. 2317). This Court's duty in reviewing the issuance of a warrant "is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238–39, 103 S.Ct.

2317 (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).

The application for both search warrants suggested that Detective Murphy is likely a reliable source of information as he had five-and-one-half years of experience as a police officer and two years of experience as a detective. The application informed the magistrate that a witness saw suspects fleeing from the bank robbery and enter a van driven by a white female and registered to Levetzow. The affidavit continues that Levetzow, a white female, told police she drove the suspects to and from the bank. She identified one of the suspects as her boyfriend, Defendant Adrian Lomas. The affidavit also provides that a witness corroborated the critical portion of Levetzow's statement in that Defendant matches the witness's description of one of the suspects.

Even if the warrant applications had reported that the police questioned Levetzow's truthfulness at times, Levetzow initially denied any knowledge of a robbery, and she said that she did not know what was going on that day, she did not know where Defendant had been, and that Defendant told her he was going to "buy weed," a magistrate evaluating both warrant applications would have had a substantial basis for concluding there was a fair probability evidence of a crime would be found in the Cellco Partnership/Verizon Wireless records and on Defendant's cell phone. Therefore, the Court cannot void the search warrants or suppress the resulting evidence.

■ Next, Defendant argues Levetzow did not voluntarily give consent for the police to search the Moline, Illinois hotel room. Defendant observes that Levetzow was handcuffed on the curb and her children were asked to sit beside her. It was in this context, Defendant asserts, that the

police officers asked Levetzow if they could search the room. Defendant argues this indicates she did not provide voluntary consent.

The Government contends that viewing all the facts of this case, Levetzow's consent was voluntary even though she was briefly handcuffed.[6] The Government also argues that even if the search was not voluntary, the Court should not exclude evidence found in the hotel room because the police inevitably would have discovered the evidence.

 It is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Of course, consent to search must be voluntarily. Id. at 228, 93 S.Ct. 2041 ("But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force."). "The government has the burden to prove the consent was voluntary by a preponderance of the evidence and based upon the totality of the circumstances." United States v. Beasley, 688 F.3d 523, 531 (8th Cir. 2012).

 "Whether consent is voluntary is a question of fact" and the Court must consider "whether from the totality of the circumstances the officer [performing the search] reasonably believed the search was consensual." United States v. Garcia, 613 F.3d 749, 753 (8th Cir. 2010). The Eighth Circuit has explained "[t]he totality of the

circumstances includes age, intelligence, education, influence of drugs, awareness of rights, length of detention, police threats, promises, or misrepresentations, whether the person was under arrest, where the consent occurs, and any objection to the search." Id. at 753–54. In addition, the Court is to consider "whether a suspect received Miranda warnings before giving consent to a search." Beasley, 688 F.3d at 531. However, even when "a suspect [is] in custody, '[the Eighth Circuit Court of Appeals has] not required an officer to provide [Miranda] warnings before requesting consent to search or held that an absence of [Miranda] warnings would make an otherwise voluntary consent involuntary.'" Id. (quoting United States v. Saenz, 474 F.3d 1132, 1137 (8th Cir. 2007) (third and fourth alternations in original)). Finally, although the Court is to consider the knowledge of subject of the search, the police need not inform the person giving consent that she has the right to withhold it. Schneckloth, 412 U.S. at 249, 93 S.Ct. 2041.

Levetzow testified at the hearing that she was outside the hotel walking her dog when the police arrived on June 11. The police placed her in handcuffs at the time Defendant was arrested and removed from the scene. The police then instructed her to sit on the curb outside the hotel.

Levetzow testified that she discussed her rights with the police before granting her consent to the search. She reported the police read her Miranda rights and she understood she could remain silent and request an attorney. Levetzow testified that she had previously allowed the police

---

6. The Government's brief also argued that Defendant did not have a reasonable expectation of privacy in the hotel room rented to Levetzow. The Government acknowledged at the hearing that Levetzow's testimony foreclosed this argument. See United States v. Williams, 521 F.3d 902, 906 (8th Cir. 2008)

(noting that if an individual has a key, is allowed to use another's room, or keeps personal belongings there, the fact that an individual "did not register or pay for the hotel room does not necessarily preclude him from having a reasonable expectation of privacy in the room").

to search her residence and her cell phone. Levetzow also testified that, although she had been handcuffed, at the time she consented to the search of the hotel room the police made her no promises, did not threaten her, and did not use force. At the hearing, she unequivocally stated that her decision to allow the police to search the hotel room was voluntary. On cross-examination, Levetzow acknowledged that she has been charged with robbery, the charges are pending, and she has not plead guilty.

■ The Court credits Levetzow's uncontradicted testimony that her consent to the search of the hotel room was voluntary. That Levetzow perhaps has an incentive to testify in a manner favorable to the Government and that she was handcuffed when, or at least shortly before, she gave consent makes it a somewhat close question. However, considering the totality of the circumstances—including that she testified she understood her <u>Miranda</u> rights, she had previously granted the police consent to search other areas, and her clear and persuasive assertion that she freely gave her consent—the Court finds her consent was voluntary.[7]

■ Moreover, even if the search violated the Fourth Amendment, the evidence is not subject to the exclusionary rule if the police inevitably would have discovered it. <u>United States v. McMana-</u> man, 673 F.3d 841, 846 (8th Cir. 2012). "To have evidence that was obtained after a constitutional violation admitted into court, the government must show that it was not obtained 'by exploitation of that illegality [but] instead by means sufficiently distinguishable to be purged of the primary taint.'" <u>Id.</u> (quoting <u>Wong Sun v. United States</u>, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). "Evidence is purged of taint and should not be suppressed '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" <u>Id.</u> (quoting <u>Nix v. Williams</u>, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)).

■ The Eighth Circuit has explained: this inevitable discovery exception applies when the government proves "by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation."

<u>Id.</u> (quoting <u>United States v. Conner</u>, 127 F.3d 663, 667 (8th Cir. 1997)).[8]

■ In this case, inevitable discovery doctrine renders the exclusionary rule inapplicable to the evidence obtained in the

---

7. There is no dispute that Levetzow had authority to consent to the search of the room even though Defendant had belongings there. Generally, "police officers may search jointly occupied premises if one of the occupants consents." <u>Fernandez v. California</u>, —— U.S. ——, 134 S.Ct. 1126, 1129, 188 L.Ed.2d 25 (2014) (footnote omitted) (citing <u>United States v. Matlock</u>, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). The evidence indicates Defendant was not physically present and objecting to the search. <u>Cf.</u> <u>Georgia v. Randolph</u>, 547 U.S. 103, 123, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

8. The <u>McManaman</u> court noted that this formulation has received some criticism. <u>McManaman</u>, 673 F.3d at 846 (noting that Judge Colloton's concurrence in <u>United States v. Thomas</u>, 524 F.3d 855 (8th Cir. 2008), describes this two-part test as both over- and underinclusive and inconsistent with <u>Nix v. Williams</u>). Regardless, both the test described in <u>McManaman</u> and the more general rule of <u>Nix</u> foreclose the application of the exclusionary rule here.

Moline hotel. Detective Murphy testified at the hearing that on June 11 he drove to Moline with other officers and helped determine the hotel had rented a room to Levetzow. Detective Murphy then left the hotel to help prepare an application for a search warrant. Defendant exited the room and the police arrested him while Detective Murphy was off preparing the application. Accordingly, if the police had not searched the apartment when they did, there is a reasonable probability that the officers would have later searched the apartment and obtained the evidence found there pursuant to a lawful search warrant. This satisfies the first prong of the Eighth Circuit's inquiry. See id. The Court credits Detective Murphy's uncontroverted testimony that he was away from the hotel preparing a search warrant application at the time Defendant exited the hotel room and the police arrested him. This satisfies the "actively pursuing a substantial, alternative line of investigation" inquiry. See id. Because the Government has established by the preponderance of evidence that the police inevitably would have discovered the items in the hotel room by lawful means if they had not searched the room at the time they did, the exclusionary rule does not apply. See Nix, 467 U.S. at 444, 104 S.Ct. 2501.

## III. CONCLUSION

For the reasons stated above, the Court must **deny** Defendant's Motion to Suppress, ECF No. 39.

**IT IS SO ORDERED.**