# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2930
_____

Laquince T. Hogan

*Plaintiff - Appellant*

v.

Wendy Kelley, Director, Arkansas Department of Correction (originally named as
Ray Hobbs)

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff
_____

Submitted: March 18, 2016
Filed: June 20, 2016
_____

Before WOLLMAN, ARNOLD, and SHEPHERD, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Laquince Hogan appeals from the district court's[1] denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

On three occasions in June and July 2008, a confidential informant for the Ashdown, Arkansas, police department bought drugs from Hogan. On August 5, Officer Tommy Stuard obtained a warrant for Hogan's arrest based on the controlled buys. The same day, Officer Doyle Couch applied for and was issued a warrant to search Hogan's home for a "dark colored handgun with a long barrel" that had been used in a homicide four days earlier. With the arrest and search warrants in hand, Stuard, Couch, and other officers proceeded to Hogan's residence, where they found him in the front yard. Hogan was arrested, $4,000 was seized from his pants pocket, and the officers entered Hogan's residence to execute the search warrant. During the search, officers opened a kitchen cabinet and found a bag of marijuana, 1.5 grams of cocaine, a digital scale, a credit card, and a Crown Royal bag. Officer Stuard opened the Crown Royal bag, which contained 37 grams of powder cocaine and 29 grams of crack cocaine. The long-barreled handgun was not located.

Hogan was charged with possession with intent to deliver cocaine and possession of marijuana, in violation of state law. At a pretrial hearing, Hogan's counsel orally moved to suppress the evidence seized from Hogan's residence on the sole ground that the search was an unlawful search incident to arrest. The motion was denied, following which Hogan was found guilty by a jury and sentenced to 125 years' imprisonment as a habitual offender. Hogan's conviction and sentence were affirmed on direct appeal. Hogan v. State, 2010 Ark. App. 434 (2010). Hogan then filed a *pro se* petition for state post-conviction relief under Arkansas Rule 37, raising several ineffective-assistance-of-counsel claims. After a hearing, the state circuit

---

[1]The Honorable Beth Deere, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties under 28 U.S.C. § 636(c).

court denied relief, and the Arkansas Supreme Court affirmed. Hogan v. State, 2013 Ark. 223 (2013).

Hogan then petitioned for federal habeas relief under § 2254 and again asserted several claims of ineffective assistance of trial counsel. The government moved to dismiss the petition, arguing that Hogan had procedurally defaulted his claims and that they lacked merit. The district court appointed counsel for Hogan and, after supplemental briefing and an evidentiary hearing, denied relief, concluding that Hogan had procedurally defaulted all of his ineffective-assistance claims by not raising and exhausting them in the state courts. The district court addressed Hogan's claim that his trial counsel was ineffective by failing to file a motion to suppress the evidence in the Crown Royal bag, concluding that it might have sufficient merit to excuse his procedural default. The court ultimately concluded that although counsel's performance was deficient, Hogan suffered no prejudice, because the contents of the Crown Royal bag would inevitably have been discovered. Reasoning that Hogan's ineffective-assistance claim was not sufficiently meritorious to excuse his procedural default, the court nevertheless granted Hogan a certificate of appealability on a single issue: "[W]hether . . . Hogan was prejudiced by his counsel's failure to file a motion to suppress the contents of the Crown Royal bag on grounds [that] the search exceeded the scope of the warrant."

A district court is generally barred from considering a habeas petitioner's procedurally defaulted claims unless the petitioner can demonstrate cause for the default and resulting prejudice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). As relevant here, a procedural default does not bar a district court from considering a petitioner's "substantial claim" of ineffective assistance of trial counsel if such a claim must be raised in a state initial-review collateral proceeding and "if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez v. Ryan, 132 S. Ct. 1309, 1315, 1320 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may

establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."); see also Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013) (expanding Martinez to encompass circumstances where "state procedural framework . . . makes it highly unlikely in a typical case that the [petitioner] will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal"); Sasser v. Hobbs, 735 F.3d 833, 853 (8th Cir. 2013) (applying Martinez and Trevino to Arkansas proceedings in capital case and concluding, "as a systematic matter," that they did not afford indigent prisoner "a meaningful review of a claim of ineffective assistance of trial counsel"). A "substantial" claim of ineffective assistance for these purposes is one that has "some merit." Martinez, 132 S. Ct. at 1318.

To prevail on a claim of ineffective assistance of trial counsel, a habeas petitioner must show that his trial counsel's performance was deficient and that there is a reasonable probability that the outcome of his trial would have been different but for counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Where counsel's failure to competently litigate a suppression issue is the focus of the ineffective-assistance claim, to demonstrate prejudice, the petitioner must "also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

It is well-settled law that when a search is authorized by a valid warrant, "the scope of the search is limited by the terms of its authorization." Walter v. United States, 447 U.S. 649, 656 (1980); United States v. Schmitz, 181 F.3d 981, 988 (8th Cir. 1999) ("A lawful search extends to all areas and containers in which the object of the search may be found." (citation omitted)). Thus, "evidence obtained as a direct result of an illegal search or seizure, [and] evidence later discovered and found to be derivative of an illegality" will be suppressed unless an exception to the exclusionary rule permits admission of such evidence. United States v. McManaman, 673 F.3d 841, 846 (8th Cir.) (citations omitted), cert. denied, 133 S. Ct. 647 (2012). Under the

inevitable-discovery exception, evidence that "ultimately or inevitably would have been discovered by lawful means" need not be suppressed. Nix v. Williams, 467 U.S. 431, 444 (1984). For this exception to apply, the government must prove by a preponderance that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct and that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation. McManaman, 673 F.3d at 846.

The warrant authorized officers to search Hogan's home for a long-barreled handgun. Because the handgun could have been hidden in a kitchen cabinet, officers lawfully opened the cabinet in Hogan's kitchen and discovered in plain view the illegal drugs, the drug scales, and the Crown Royal bag. See id. at 848 (noting that officers may seize incriminating evidence in plain view during execution of valid search warrant). The contents of the Crown Royal bag, however, were not in plain view. Because a long-barreled handgun—the only item described in the search warrant—could not have been hidden inside the Crown Royal bag and because there was nothing obviously incriminating about the bag itself, we will assume that the officers exceeded the scope of the search warrant by opening the bag and seizing the drugs therein.

Nevertheless, there was no "reasonable probability" that the contents of the Crown Royal bag would have been suppressed had trial counsel filed such a motion, because the inevitable-discovery exception would have rendered the bag's contents admissible. See Kimmelman, 477 U.S. at 375. Given the officers' discovery of the cocaine, marijuana, and drug scales in plain view in Hogan's kitchen cabinet near the Crown Royal bag, there was a reasonable probability that officers could have secured a warrant to search the contents of the bag. See, e.g., United States v. Pennington, 287 F.3d 739, 746 (8th Cir. 2002) (noting that Crown Royal bags are "commonly used to carry or conceal illegal drugs"); United States v. Hernandez Leon, 379 F.3d 1024, 1028 (8th Cir. 2004) (stating that the presence of drugs and drug paraphernalia "in or

around a suspect's house is significant on the issue of probable cause" to obtain a search warrant). Indeed, even Hogan's expert agreed that in these circumstances, officers would have had "probable cause based upon the initial discovery of contraband in [the kitchen] cabinet" to obtain a warrant to search the Crown Royal bag.

Moreover, in addition to its investigation into the presence of the long-barreled handgun at Hogan's residence, the Ashdown police department was also pursuing a separate drug-trafficking investigation involving Hogan. As noted above, a confidential informant had made three controlled drug buys from Hogan, which led to the warrant for Hogan's arrest. Hogan argues that the officers were no longer actively pursuing the drug-trafficking investigation when they illegally seized the contents of the Crown Royal bag because that investigation concluded at the moment officers arrested him on those charges. We do not agree that the drug-trafficking investigation necessarily ended with Hogan's arrest, because upon executing the warrant for Hogan's arrest, the officers recovered $4,000 from Hogan's pants pocket—a strong indication that Hogan's drug-trafficking activity was ongoing and that it went far beyond the three controlled buys set forth in the warrant affidavit. The lawfully discovered drugs and drug paraphernalia in plain view in Hogan's residence made it virtually certain that the investigation into Hogan's drug-trafficking activity would continue. In these circumstances, it was not clear error for the district court to conclude that police were actively pursuing a substantial, alternative line of investigation at the time they seized the contents of the Crown Royal bag.

Hogan cites United States v. James, 353 F.3d 606, 617 (8th Cir. 2003), in support of his contention that his arrest ended the drug-trafficking investigation, but that case is distinguishable. In James the defendant had been arrested and was detained awaiting extradition on charges of sexual misconduct with a child when officers seized evidence of possession of child pornography. We observed that the alleged alternative investigation into sexual-misconduct charges "appear[ed] to be

over," and we concluded that "[i]n any event," there was "no evidence at all of any then-existing alternative investigation." Id. at 617. Here, by contrast, Hogan's arrest occurred only minutes before the search of his residence, followed by the lawful recovery of additional evidence of drug-trafficking during the search of his residence, rendering implausible any suggestion that the investigation into Hogan's drug-trafficking activity had ended.

In sum, Hogan suffered no Strickland prejudice as a result of his trial counsel's failure to file a motion to suppress the contents of the Crown Royal bag on the ground that the search exceeded the scope of the warrant, because application of the inevitable-discovery exception to the exclusionary rule would have resulted in the denial of such a motion. Hogan has thus failed to demonstrate a substantial claim of ineffective assistance of trial counsel sufficient to excuse his procedural default.

The judgment is affirmed.

_____