# IN THE COURT OF APPEALS OF IOWA

No. 18-1961
Filed March 18, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**SEAN TIMOTHY HUNTER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

In this consolidated appeal, Sean Hunter appeals the district court's denial of his motion to suppress evidence obtained from his cell phone. **REVERSED AND REMANDED IN BOTH CASES.**

John O. Moeller, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Greer and Ahlers, JJ. Tabor, J., takes no part.

**AHLERS, Judge.**

Law enforcement officers executing a search warrant are permitted to detain the occupants or those in the immediate vicinity of the premises while a proper search is conducted. *See Michigan v. Summers*, 452 U.S. 692, 701-04 (1981). This appeal calls on us to answer the question of how far is too far in determining whether an occupant is in the immediate vicinity of the premises to be searched. While we cannot answer the question with a definitive unit of measure, we can and do say that "a few blocks" is too far under the circumstances of this case.

In this consolidated appeal, Sean Hunter appeals the district court's denial of his motion to suppress evidence obtained from his cell phone and the revocation of his probation in a separate criminal case. On appeal, Hunter argues the seizure of both his person and his cell phone away from his residence and the later search of his cell phone violated his rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. He also argues there was insufficient admissible evidence to support his conviction. Finally, he argues the revocation of his probation and sentence in the separate criminal case must be vacated because the revocation was based on his conviction.

## I. Background

### a. Factual Background

This consolidated appeal arises out of two separate criminal cases, both involving drug crimes. In the first case, FECR376353, Hunter pleaded guilty to manufacturing, delivering, or possessing with intent to manufacture or deliver marijuana in violation of Iowa Code section 124.401(1)(d) (2016) and failure to affix

tax stamp in violation of section 453B.12. The district court granted Hunter a deferred judgment and placed Hunter on probation for two years.

The search at issue on appeal occurred after Hunter was sentenced in the first case. The search led to Hunter being charged in the second case on appeal, FECR387453. In the second case, Davenport police received a tip that Hunter was dealing drugs out of his residence in Davenport. They opened an investigation and obtained a warrant permitting them to search Hunter's residence, "any and all storage areas under the control or accessible to the occupants therein," and "all open grounds, yards, easements, parking areas or other open area associated" with the residence. The warrant application did not request authority to search Hunter's person or to search Hunter's cell phone, and the warrant did not authorize any such searches.

After obtaining the search warrant, a Davenport police officer was conducting surveillance of Hunter's residence. The plan was to execute the warrant that day, but the full search team had not yet arrived. While conducting surveillance, the officer observed Hunter and another male leave the residence on motorcycles. The officer followed the two to a gas station a few blocks away and initiated contact with Hunter. The officer detained Hunter and conducted a pat down for weapons. The officer confiscated Hunter's cell phone and placed Hunter in the back of the police car. The officer took Hunter back to the residence, where the officer and other Davenport police officers executed the search warrant. The officers found several controlled substances and drug-related items in Hunter's kitchen, including 32.8 grams of marijuana, a plastic bag containing powdered cocaine, and a pill pouch containing LSD. The officers arrested Hunter and

retained his cell phone. The inventory of seized property filed after the search did not list the cell phone.

One week after the search of Hunter's residence, Davenport police obtained another search warrant to search Hunter's cell phone. The subsequent search of the phone revealed several text message exchanges between Hunter and other people that appeared to be a discussion of drug sales.

### b. Procedural History

In the second case, Hunter was charged with: (1) manufacturing, delivering, or possessing with intent to manufacture or deliver LSD in violation of Iowa Code section 124.401(1)(b)(5) (2017); (2) manufacturing, delivering, or possessing with intent to manufacture or deliver marijuana in violation of Iowa Code section 124.401(1)(d); and (3) possession of marijuana in violation of Iowa Code section 124.401(5). Hunter moved to suppress the evidence obtained from his cell phone on the ground that the initial seizure of the cell phone was unlawful, noting the original warrant did not "show or claim a nexus between any criminal activity at the premises and the Defendant or his cell phone." After a hearing, the district court denied the motion.

The case proceeded to a bench trial. The cell phone messages were admitted into evidence. Hunter was found guilty of all three charges. Hunter moved to enlarge the court's findings of fact and urged it to reconsider its ruling on his motion to suppress. The district court granted Hunter's request to enlarge its finding of facts by making additional factual findings, but it denied Hunter's request to reconsider the ruling on the suppression motion. Hunter was sentenced to pay various financial obligations, and terms of incarceration were imposed for all three

charges, with all but the statutory minimum sentence of two days on the possession of marijuana charge suspended. At the same hearing, Hunter stipulated his conviction in the second case (FECR387453) constituted a violation of probation imposed in the first case (FECR376353). As a consequence of violating probation in the first case, the court revoked Hunter's deferred judgment and sentenced him to pay various financial obligations and imposed terms of incarceration, which were suspended. Hunter appeals.

## II. Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017). "We examine the entire record and 'make an independent evaluation of the totality of the circumstances.'" *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019) (quoting *State v. Meyer*, 543 N.W.2d 876, 877 (Iowa 1996)). "We consider both the evidence introduced at the suppression hearing as well as the evidence introduced at trial." *State v. Palmer*, 791 N.W.2d 840, 844 (Iowa 2010).

## III. Discussion

Hunter argues the seizure of his person and his cell phone at the gas station violated his rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. Because Hunter has not argued the United States Constitution and Iowa Constitution should be interpreted differently, we will interpret them identically for this appeal. *See State v. Wilkes*, 756 N.W.2d 838, 843 n.1 (Iowa 2008).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 528 (1967). "Evidence obtained in violation of the Fourth Amendment is inadmissible in a prosecution, 'no matter how relevant or probative the evidence may be.'" *State v. Freeman*, 705 N.W.2d 293, 297 (Iowa 2005) (quoting *State v. Manna*, 534 N.W.2d 642, 643–44 (Iowa 1995)). "Warrantless searches and seizures are per se unreasonable unless one of several carefully drawn exceptions to the warrant requirement applies." *State v. Pettijohn*, 899 N.W.2d 1, 14 (Iowa 2017).

Hunter asserts the seizure of his person and his cell phone at the gas station was a warrantless seizure under the Fourth Amendment because the warrant for his residence did not authorize the seizure or search of Hunter or his cell phone. He also argues the contents of the cell phone obtained pursuant to the later-obtained warrant was fruit of the poisonous tree and should not have been admitted as evidence at his trial. The State argues the warrant to search the residence was sufficient to permit detaining Hunter and taking his cell phone under the United States Supreme Court's holding in *Summers*, 452 U.S. 692. Hunter has the better of the argument.

In *Summers*, law enforcement officers obtained a warrant to search the defendant's residence for narcotics. 452 U.S. at 701. Officers arrived at the residence and found the defendant descending the front steps. *Id.* at 693. The officers detained the defendant, moved him back inside the residence, and

executed the search warrant. *Id.* After discovering narcotics in the basement, the officers arrested the defendant, searched him, and discovered heroin in his pocket. *Id.* at 694. The Court found the search of the defendant's person was permissible under the Fourth Amendment because the warrant to search the residence "implicitly carrie[d] with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705.

The Court limited *Summers* decades later in *Bailey v. United States*, 568 U.S. 186 (2013). In *Bailey*, police officers were about to execute a search warrant on the defendant's residence when officers observed the defendant and another person leave the residence and enter a car. *Id.* at 190. Two detectives followed the defendant while other police officers executed the search warrant. *Id.* The detectives followed the defendant for about one mile before pulling the defendant's vehicle over in a parking lot. *Id.* The detectives ordered the men out of the car, patted them down, and found a ring of keys in the defendant's pocket. *Id.* The detectives handcuffed both men, informed them they were being detained incident to the search warrant on the defendant's residence, and transported them back to the residence. *Id.* at 191. Officers found a gun and drugs in the apartment and arrested the defendant. *Id.* The officers later discovered that one of the keys seized from the defendant opened the door to the apartment at issue. *Id.* The Court held the detectives violated the defendant's Fourth Amendment rights. *Id.* at 202. Overturning the district court's denial of the defendant's motion to suppress the evidence obtained from the defendant's person during the stop, the Court imposed "[a] spatial constraint defined by the immediate vicinity of the premises to be searched." *Id.* at 201. The Court explained this new constraint was necessary

because "[o]nce an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe." *Id.* Applying this new constraint to the case before it, the Court found the defendant's detention in a parking lot one mile away from the residence was "at a point beyond any reasonable understanding of the immediate vicinity of the premises in question." *Id.*

We find the holding in *Bailey* to be controlling, as the facts in this case are very similar. Like *Bailey*, the detention here occurred at a point well beyond a reasonable understanding of the "immediate vicinity" of Hunter's residence. Officers detained Hunter at a public gas station a few blocks away from the residence. The State argues Hunter was in the "immediate vicinity" of the residence because Hunter could have called someone to have the person destroy evidence of criminal activity if he noticed the police or could have raced home to destroy evidence himself. Neither argument is persuasive. There is no evidence in the record showing Hunter was aware of an officer observing his residence, nor is there evidence Hunter was in view of the residence or independently knew the police had obtained a warrant to search his residence. *See State v. VanHecke*, No. 05-1181, 2006 WL 2265361, at *4 (Iowa Ct. App. Aug. 9, 2006) (holding *Summers* did not support the detention of a defendant who was 400 yards away from the residence, was not in view of the residence, and was unaware of the warrant to search the residence at the time he was detained); *see also United States v. Sherrill*, 27 F.3d 344, 346 (8th Cir. 1994) (holding *Summers* did not support the detention of an occupant who had driven one block away from the residence to be searched); *cf. State v. Phipps*, 528 N.W.2d 665, 667–68 (Iowa Ct.

App. 1995) (holding *Summers* supported detention of the defendant and another person seen exiting the premises to be searched as officers approached to execute the warrant, the two individuals were "fairly near" the door of the apartment to be searched, the two individuals were between the approaching officers and the apartment to be searched, and the other individual tried to alert the occupants of the apartment to the presence of law enforcement officers). Due to the fact Hunter was not within the "immediate vicinity" of the residence when he was detained, the seizure of Hunter, the search of Hunter, and the seizure of his cell phone were all impermissible. Since the subsequent search warrant for the cell phone was predicated on the unlawful seizure of Hunter and the phone, the contents of the phone obtained via the search warrant were unlawful fruit of the poisonous tree and were not admissible at trial. *See Wong Sun v. United States*, 371 U.S. 471, 485–88 (1963).

The State tries to save the evidence obtained from the unlawfully-searched cell phone by arguing the seizure of the cell phone can be upheld under the inevitable discovery doctrine, under which "relevant, probative evidence gathered despite Fourth Amendment violations is not constitutionally excluded when the police would have inevitably discovered the same evidence acting properly." *State v. Christianson*, 627 N.W.2d 910, 912 (Iowa 2001). The State has the burden of proving the evidence would have been discovered through lawful means. *State v. Vincik*, 436 N.W.2d 350, 354 (Iowa 1989); *see also Hogan v. Kelley*, 826 F.3d 1025, 1028 (8th Cir. 2016) ("For [the inevitable discovery doctrine] to apply, the government must prove by a preponderance that there was a reasonable probability that the evidence would have been discovered by lawful means in the

absence of police misconduct and that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation."). Upon our review of the record, we conclude the State has not met its burden. The State did not introduce evidence showing any basis for concluding that discovery of the cell phone or its content was inevitable, or even that officers intended to seek the phone or its contents. Given the portable nature of cell phones, not to mention the ease of losing, discarding, exchanging, or disposing of a cell phone or its contents, it was not inevitable the phone or its contents would have been discovered had officers not illegally seized Hunter and the phone.

## IV.    Conclusion

We conclude the seizure of Hunter and his cell phone was not constitutionally permitted and the subsequent warrant authorizing search of the phone was fruit of the unlawful seizure. Therefore, the contents of the cell phone obtained via the subsequent search warrant should have been suppressed and not admitted as evidence at trial. Due to the improperly-obtained evidence being admitted at trial, the conviction and sentence imposed are hereby vacated and the case (FECR387453) is remanded for a new trial without admission of the improperly-obtained evidence.

We do not address Hunter's sufficiency-of-the-evidence claim on appeal in light of our resolution remanding for a new trial in FECR387453. Due to the fact that the revocation of his probation in FECR376353 was based on his conviction in FECR387453, which has now been vacated, we vacate the revocation of his

probation and the sentence imposed in FECR376353 and remand the case for further proceedings.

We remand both cases for proceedings consistent with this opinion.

**REVERSED AND REMANDED IN BOTH CASES.**